## MAULDIN *v.* STATE

[No. 386, September Term, 1964.]

*Decided July 30, 1965.*

The cause was argued before HAMMOND, HORNEY, MAR-
BURY, OPPENHEIMER and BARNES, JJ.

*Russell J. White* for appellant.

*John C. Cooper, III, Assistant Attorney General,* with whom
were *Thomas B. Finan, Attorney General, Charles E. Moy-
lan, Jr.* and *Edward Angeletti, State's Attorney* and *Assistant
State's Attorney,* respectively, *for Baltimore City,* on the brief,
for appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellant Mauldin was convicted by a jury of manslaugh-
ter by automobile after he drove his car at terrific speed—well
over eighty miles an hour—on the Jones Falls Expressway in-
to the rear of another car and caused the death of a woman
passenger in the car that was struck. He makes only one con-
tention of error, a claim that he did not freely and voluntarily
consent to take the "chemical test for intoxication" provided
for by Code (1964 Supp.), Art. 35, Sec. 100, because he was
so intoxicated as to be incapable of giving consent and that,
therefore, the results of the test which showed him to be in-
toxicated improperly were admitted against him.

Officer Gray, who took Mauldin into custody at the scene,
said he was swaying, his speech was slurred and the odor of
alcohol on his breath was noticeable. While he was taking Maul-
din to the chemical laboratory at the Central Police Station to
undergo the test of his blood, Officer Gray followed the direc-
tion of paragraph g of Sec. 100 of Art. 35 of the Code to an
arresting officer, "to advise the person so charged [with the
operation of a motor vehicle while under the influence of in-
toxicating liquor] that he may, but need not, submit to a chem-
ical analysis * * *," telling Mauldin "that he could take the
test or refuse it, and that it could be used for him or against
him."

Officer Brennan, who conducted the test (in which the sus-
pect breathes into a machine which translates the alcohol de-
tectable in the breath into the amount in the blood stream),

testified that he went through an elaborate explanation to Mauldin of the purposes and effects of the test, of the fact that a refusal to take the test is permissible and will not be used in any way against the suspect, that the results can be used in court for or against the suspect, and that Mauldin said he understood fully and signed a form which incorporated all the explanation of Officer Brennan and Mauldin's replies and which Mauldin signed to indicate his agreement to take the test.

This testimony of Officer Brennan and the form signed by Mauldin came into evidence without objection, as did the results of the test (which was taken about an hour and a half after the accident) which showed a concentration of alcohol in Mauldin's blood of .20%—paragraph (a) 3 of Sec. 100 of Art. 35 of the Code provides that a concentration of .15% or more "shall be prima facie evidence that the defendant was under the influence of intoxicating liquor"—and as did Officer Brennan's opinion as an expert that the concentration of alcohol in the blood was greater at the time of the accident than at the time of the test. Only after all the testimony as to the test and its results as applicable to Mauldin had come into evidence for consideration by the jury did appellant seek to keep it out by a motion to strike. The motion was refused by Judge Prendergast because there had not been compliance with Maryland Rule 522 d 2, which provides that:

"Every objection to the admissibility of evidence shall be made at the time when such evidence is offered, or as soon thereafter as the objection to its admissibility shall have become apparent, otherwise the objection shall be treated as waived."

We think Judge Prendergast did not err in denying the motion to strike the evidence. *Martin v. State,* 203 Md. 66; *Martelly v. State,* 230 Md. 341, 348; *Gatewood v. State,* 207 Md. 374, 378.

There is no reason in this case why the waiver provision of Rule 522 d 2 should not apply. Statutes may constitutionally go further than does the Maryland statute. Fundamentally, no constitutional or other basic right of one accused of alcoholic intoxication in connection with or as part of a crime is affronted

or infringed if chemical tests showing the degree of intoxication are made of him without his consent, before trial, even if he is unconscious. *Breithaupt v. Abram,* 352 U. S. 432, 435, 1 L. Ed. 2d 448. There the Supreme Court said:

> "To be sure, the driver here was unconscious when the blood was taken, but the absence of conscious consent, without more, does not necessarily render the taking a violation of a constitutional right; and certainly the test as administered here would not be considered offensive by even the most delicate [referring to *Rochin v. California,* 342 U. S. 165, 96 L. Ed. 183, wherein the stomach of the accused was pumped out]."

See also *Dyson v. State,* 238 Md. 398, 404, as to the things to which a suspect may constitutionally be required to do before trial in aid of identification of the person or his connection with the crime.

The applicable statute, Sec. 100 of Art. 35 of the Code, makes it plain that affirmative consent to the taking of the test is not a prerequisite to its validity or to the admissibility of its results. Paragraph c provides under the sub-title "Refusal to Submit to Test" that "no person shall be compelled to submit himself * * * for the purpose of a chemical analysis * * * and no inference * * * concerning either his guilt or innocence arises by reason of his refusal to submit * * *." There is no claim here that Mauldin attempted to refuse to submit to the test.

Most courts hold that if there is an absence of refusal to submit to the test the failure to affirmatively or validly agree to its taking does not bar the presentation of its results into evidence. It has been held that the State may constitutionally require the taking of such a test as a prerequisite to the privilege of using the roads. *Walton v. City of Roanoke* (Va.), 133 S. E. 2d 315; *Lee v. State* (Kan.), 358 P. 2d 765; *State v. Bock* (Ida.), 328 P. 2d 1065; *Prucha v. Dept. of Motor Vehicles* (Neb.), 110 N. W. 2d 75, Anno. *Suspension or Revocation of Driver's License for Refusal to Take Sobriety Test,* 88 A. L. R. 2d 1064. See also *Touchton v. State* (Fla. En

596

Banc), 18 So. 2d 752; *State v. Duguid* (Ariz.), 72 P. 2d 435; *Wells v. State* (Ind.), 158 N. E. 2d 256, 258.

*Judgment affirmed.*